**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RICKY RAY QUEEN,

                              Plaintiff,

    v.                                                           No. 04-CV-342

INTERNATIONAL PAPER COMPANY,              (FJS/DRH)

                              Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

BENDALL & MEDNICK               KEVIN S. MEDNICK, ESQ.
Attorney for Plaintiff
Post Office Box 1022
836 Plymouth Avenue
Schenectady, New York 12301-1022

THUILLEZ, FORD, GOLD, JOHNSON    SCOTT T. JOHNSON, ESQ.
   & BUTLER, LLP
Attorney for Defendant
20 Corporate Woods Boulevard
6th Floor
Albany, New York 12211

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Presently pending are the motions of defendant International Paper Co. ("International Paper") to preclude plaintiff Ricky Ray Queen ("Queen") from offering at trial the testimony of expert witnesses (Docket No. 36), and of Queen for leave to serve a supplemental report of his economic expert witness (Docket No. 38). For the reasons which follow, International Paper's motion is granted in part and denied in part, and Queen's motion is granted.

## I. Background

On January 12, 2002, Queen, then thirty-eight, was employed by a construction company and was performing work at an International Paper facility in Ticonderoga, Essex County, New York. Queen alleges that while there, he was struck on the right arm by a piece of wood which fell through an opening overhead. Queen alleges that as a result, he lost the use of his right arm and can no longer work. Compl. (Docket No. 1).

The complaint was filed on March 26, 2004. Compl. Following a conference on July 29, 2004, a Uniform Pretrial Scheduling Order (UPSO) was entered establishing a schedule for progression of the case. Docket No. 12. Among other things, the UPSO established a deadline for completion of discovery of May 1, 2005 and required that any expert witness to be called by Queen be disclosed in accordance with Fed. R. Civ. P. 26(a)(2) at least ninety days prior to the close of discovery, or January 31, 2005. Id. The discovery deadline was extended twice, the second time to January 1, 2006. Docket Nos. 26, 29. Thus, under the UPSO Queen was required to disclose his expert witnesses in accordance with Rule 26(a)(2) on or before October 3, 2005. At different times, Queen provided International Paper with information regarding eight expert witnesses whom he intends to call to testify at trial. A date for trial has not yet been set.[1] Those experts and the details regarding the Rule 26(a)(2) disclosures for each are set forth below.

## II. International Paper's Motion to Preclude

International Paper contends that the testimony of all eight experts identified by

---

[1] Queen's motion for summary judgment remains pending. See Docket No. 33.

2

Queen should be precluded on the grounds that Queen's Rule 26(a)(2) disclosures were untimely and deficient, and that the testimony of certain of the experts will be cumulative.

Rule 26(a)(2)(A) and (B) establish the substantive requirements for the disclosure of information regarding expert witnesses. The rule requires disclosure of the identity of any expert witness and, as to those "specially employed to provide expert testimony":

> (a) a written report prepared and signed by the witness containing:
>
>> (i) all opinions to be stated by the witness; and
>>
>> (ii) the bases and reasons for the opinions;
>
> (b) the information considered by the expert in forming the opinions;
>
> (c) any summaries to be used by the witness;
>
> (d) the witness' qualifications, including a list of publications by the witness within the past ten years;
>
> (e) any compensation to be paid to the witness; and
>
> (f) a list of any cases in the last four years in which the witness has testified as an expert at trial or deposition.

Under Rule 26(a)(2)(C), these disclosures must be made "at the times and in the sequence directed by the court." In this district, the timing and sequence of expert disclosures are established in the UPSO. See N.D.N.Y.L.R. 26.3.

The federal rules make available a full range of sanctions for violations of both the substance and timing of expert disclosure. See Fed. R. Civ. P. 16(f), 37(c)(1). Under these rules, defects in the substance of expert disclosure or its timing permit a court to consider the full range of sanctions authorized by Rule 37(b)(2)(A)-(C). See Fed. R. Civ. P. 16(f), 37(c)(1). The cumulative effect of these provisions is to "confer[] broad discretion on a court to fashion a remedy appropriate to the violation . . . informed by the facts of each

3

case, including among others any pattern of noncompliance, . . . the relevance and probative value of the . . . evidence, and any prejudice to opposing parties . . . ." Lory v. General Elec. Co., 179 F.R.D. 86, 89 (N.D.N.Y. 1998) (citations omitted).

Thus, on International Paper's motion here, the questions presented as to each of Queen's experts are (1) whether Queen's disclosures were defective in substance or timing, and, if so, (2) what, if any, remedy is appropriate.[2]

### A. Joseph McHugh, P.E.

Joseph McHugh is an engineer. Prior to the October 3, 2005 deadline for Queen's expert disclosure, Queen served International Paper with written notice of his intent to call McHugh as an expert witness, McHugh's curriculum vitae, a written statement of the opinions McHugh was expected to express during his testimony, the bases for those opinions, and the information upon which McHugh relied in forming those opinions. Pl. Supplemental Resp. to Interrogs. (Docket No. 36, Ex. A) ("Pl. Supp. Resp.") at 3-8. The disclosure was signed by Queen's counsel but not McHugh and failed to include a list of publications, McHugh's compensation, or a list of cases in which McHugh had testified as an expert. Id. On February 23, 2006, over four months after the deadline for Queen's expert disclosure and seven weeks after the close of discovery, Queen served International Paper with a report signed by McHugh as well as McHugh's compensation and prior

---

[2]International Paper also contends that the testimony of certain physician expert witnesses should be precluded as cumulative. International Paper's motion on this ground raises an evidentiary issue which can only be made in light of the evidence to be presented at trial. The trial judge is in the best position to make that determination and, therefore, International Paper's motion on that ground is denied without prejudice to renewal before the assigned district court judge.

testimony. Johnson Aff. (Docket No. 36(2) at ¶ 9; Mednick Aff. (Docket No. 38(2)) at ¶ 14. The signed report is identical to the unsigned summary previously provided. Compare Pl. Supp. Resp. at 3-8 with McHugh Report (Docket No. 36(7)). International Paper, however, rejected service of McHugh's report. Johnson Aff. at ¶ 9 & Ex. F.

Thus, it appears that McHugh's report and his qualifications were timely disclosed to International Paper, the contents of that report satisfied the requirements of Rule 26(a)(2)(B), and what was disclosed untimely was a signed copy of the report, McHugh's compensation, and his prior testimony. In the circumstances presented here, the untimely provision of a signed copy of the identical report and the other information was harmless and caused no prejudice, particularly where Queen has agreed to a deposition of McHugh if desired now by International Paper and where a trial date has not yet even been scheduled. See Fed. R. Civ. P. 37(c)(1) (directing that preclusion is inappropriate where a defect in production is "harmless"). Accordingly, International Paper's motion as to McHugh is denied in all respects.

### B. James Lambrinos, Ph. D.

Dr. James Lambrinos is an economist. As with McHugh, prior to the expert disclosure deadline, Queen served International Paper with an unsigned report setting forth the opinions and bases therefore to be asserted by Lambrinos as well as his curriculum vitae and a list of his publications. Pl. Supp. Resp. at 19-20 & Ex. F. The disclosure was signed by Queen's counsel but not Lambrinos and failed to include Lambrinos' compensation or a list of cases in which Lambrinos had testified as an expert. Id. On February 17, 2006, over four months after the deadline for Queen's expert disclosure and

5

six weeks after the close of discovery, Queen served International Paper with a report signed by Lambrinos as well as Lambrinos' compensation and prior testimony. Johnson Aff. at ¶ 9 & Ex. D; Mednick Aff. at ¶ 14. The signed report is substantially identical to the unsigned summary previously provided. Compare Pl. Supp. Resp. at 19-20 with Lambrinos Report (Docket No. 36(6)). International Paper, however, rejected service of Lambrinos' report. Johnson Aff. at ¶ 9 & Ex. F.

As with the McHugh disclosures, the substance of the Lambrinos disclosures appears now to comply with the requirements of Rule 26(a)(2)(B). As to the timing, the substance of the disclosures was made prior to the deadline, the defects were cured upon notice by International Paper to Queen and well before trial, and Queen has agreed to a deposition of Lambrinos if desired by International Paper. In these circumstances, any defects were harmless and caused no prejudice to International Paper. Accordingly, International Paper's motion as to Lambrinos is denied in all respects.

### C. Leona Liberty, Ed. D.

Dr. Leona Liberty is a vocational rehabilitation specialist. No disclosure of any kind for her was made prior to the October 3, 2005 deadline for expert disclosure. On December 8, 2005, over two months after the deadline for Queen's expert disclosure and three weeks before the close of all discovery, Queen served International Paper with a report signed by Liberty containing her opinions and the bases therefore, the information relied upon, her curriculum vitae including prior publications, and a list of cases where she had previously testified as an expert. Pl. Second Supplemental Resp. to Interrogs. (Docket No. 36(4) ("Pl. Second Supp. Resp.") . The service of this disclosure followed the timely

6

expert disclosure made by International Paper on or about November 18, 2005. Johnson Aff. at ¶ 8. The disclosure omitted any description of the compensation to be paid to Liberty. Pl. Second Supp. Resp. International Paper rejected service of the Liberty expert disclosure. Johnson Aff. at ¶ 8.

While the content of the Liberty expert disclosure substantially complies with the requirement of Rule 26(a)(2)(B) and is readily curable in its sole apparent defect, the untimeliness of the disclosure is neither harmless nor without prejudice. The disclosure was made only after International Paper had made its expert disclosures. In many cases, a late disclosure may be remedied by extending the time for the opposing party to depose the expert or serve its own expert response. Here, however, International Paper timely disclosed its own experts. Thus, Queen has enjoyed the benefit of reviewing International Paper's expert reports before Liberty prepared and served her report. This would afford Queen an unintended and unfair tactical advantage and would operate to the material prejudice of International Paper. Thus, in the circumstances presented here, preclusion of Liberty as an expert witness is compelled to the extent that Queen may not offer Liberty's testimony during his direct case.

The question whether Queen may call Liberty as a witness in rebuttal to evidence offered by International Paper presents a different question. Any rebuttal expert witness report was due to be served under the UPSO on or before December 16, 2005. UPSO at ¶ 6(a)(3). As to a rebuttal expert witness report, then, Queen's service of the Liberty report on December 8, 2005 was timely. Therefore, Queen is granted leave to call Liberty as a rebuttal expert witness to the extent permitted, if at all, by the trial court.

**D. Drs. Handley, Lewis, Choi, and Manthorne**

Drs. William Handley, James Lewis, Moon Choi, and Lee Ann Manthorne were Queen's treating physicians. The four physicians were timely identified as expert witnesses and International Paper was provided a summary by Queen's counsel of their anticipated testimony. Pl. Supp. Resp. at 8-18. It appears from the record on this motion that the medical records for Queen's treatment by each of these doctors was provided to International Paper. No signed reports for any of these four witnesses were served by Queen nor did Queen ever provide International Paper with the compensation to be paid these witnesses or the cases in which they had previously testified. Johnson Aff. at ¶ 7. However, International Paper took the deposition of Choi on September 28, 2005. Mednick Aff. at ¶ 11.

Even if the testimony of a treating physician is limited to care, treatment, and diagnosis, that testimony relies on "scientific, technical, [and] other specialized knowledge" and is therefore governed by Fed. R. Evid. 702. See Lamere v. New York State Office for the Aging, 223 F.R.D. 85, 87 (N.D.N.Y.2004) (Treece, M.J.). Thus, notice to adverse parties of the anticipated opinion testimony must be given in accordance with Rule 26(a)(2). Philbert v. George's Auto & Truck Repair, No. 04-CV-405 (DRH), 2005 WL 3303973, at *1 (N.D.N.Y. Dec. 6, 2005). The notice required, however, is limited for a treating physician testifying to care and treatment to disclosing the identity of the physician as required by Rule 26(a)(2)(A) and does not require the provision of a report and other information mandated by Rule 26(a)(2)(B) for a specially retained expert. See Holdner v. Wal-Mart Stores, Inc., No. 03-CV-0763E(SC), 2005 WL 1263152, at *1 n. 10 (W.D.N.Y. May 26, 2005); Lamere v. New York State Office for the Aging, No. 03-CV-0356, 2004 WL 1592669, at *1 (N.D.N.Y. July

8

14, 2004) (McAvoy, J.); Ziemba v. Armstrong, No. Civ. 3:98CV2344(JCH), 2004 WL 834683, at *1 (D. Conn. Mar. 19, 2004) ("Thus, to the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a "specially employed" expert and is not subject to the written report requirements of Rule 26(a)(2)(B), notwithstanding that the witness may offer opinion testimony under the Federal Rules of Evidence.").

Here, Queen has provided the notice required by Rule 26(a)(2)(A) as to each treating physician and, therefore, each may testify to the care and treatment provided to Queen. The scope of that testimony and the extent to which opinion evidence may be adduced depends on the nature of the care and treatment provided and is a matter committed to the discretion of the trial judge. See Philbert, 2005 WL 3303973, at *2-3.(holding that the opinions of a treating physician which were necessary and material to the care and treatment of the patient may be adduced at trial).

Queen, however, seeks as well to elicit opinion testimony from his treating physicians as specially employed experts. There is no question that Queen has failed to satisfy the requirements of Rule 26(a)(2)(B) as to any of the four treating physicians. No signed reports were served, no compensation disclosed, and no list of prior cases in which the witness testified as an expert was provided. These omissions were material and significant where Queen sought to move his treating physicians into the realm of specially employed experts. Queen's failure to disclose such significant and substantial matters, particularly the omission of any signed reports, was not harmless or without prejudice. International Paper could not reasonably determine the opinions to be elicited from these witnesses beyond care and treatment and, therefore, could not reasonably determine whether to depose the

9

witnesses or whether a rebuttal expert was necessary.[3]

Accordingly, International Paper's motion is granted to the extent that Queen is precluded from eliciting testimony from any of the four treating physicians as specially employed experts but is denied to the extent that Queen may elicit testimony from Handley, Lewis, Choi, and Manthorne as treating physicians.

### E.  Dr. Bruce Minkin

Dr. Bruce Minkin did not treat Queen but performed an independent medical examination of Queen in the course of Queen's application for Workers' Compensation benefits. Queen timely identified Minkin as an expert witness and served International Paper with a summary by his counsel of Minkin's anticipated testimony. Johnson Aff. at ¶ 7; Pl. Supp. Resp. at 3, 18-19. Queen never served a signed report, never stated the compensation to be paid or the cases in which Minkin had previously testified as an expert, and never provided Minkin's curriculum vitae. Johnson Aff. at ¶ 7. International Paper took the deposition of Minkin on September 28, 2005. Mednick Aff. at ¶ 11 & Ex. 2 ("Minkin Dep.").

Minkin is not a treating physician. See Mednick Aff. at ¶ 11. Therefore, Queen may elicit his expert opinions only in compliance with Rule 26(a)(2)(B). But for International Paper's deposition of Minkin, Queen's disclosures regarding Minkin fell far short of sufficient, omitting any signed report, compensation, or cases in which he previously

---

[3] International Paper did take the deposition of Choi. See Mednick Aff. at Ex. 3. However, in the absence of the omitted disclosures, the Choi deposition constituted no more than a deposition of a treating physician rather than a specially employed expert.

10

testified as an expert. However, at Minkin's deposition, International Paper was able to review Minkin's file of his examination of Queen (Minkin Dep. at 6) and to question Minkin directly concerning his qualifications (Minkin Dep. at 4-5), his examinations of Queen, and his opinions and the bases for those opinions. Minkin was also questioned concerning his compensation. Minkin Dep. at 28. In short, International Paper enjoyed the opportunity to obtain all information to which it was entitled under Rule 26(a)(2)(B) and appears to have done so well in advance of the deadline for expert disclosure. Thus, any defects in Queen's disclosures regarding Minkin were harmless and without prejudice.

Accordingly, International Paper's motion regarding Minkin is denied.

### III. Queen's Motion to Supplement

Queen moves for leave to supplement the report of Lambrinos based on recently obtained new information on Queen's income. Mednick Aff. at ¶ 16. Supplementation of disclosures must be made no later than thirty days before the start of trial. Fed. R. Civ. P. 26(a)(3), (e)(1). No trial date has yet been set in this case and Queen's proposed supplementation is, therefore, timely. Moreover, the proposed supplementation merely revises the annual income figures used by Lambrinos in calculating Queen's claimed economic loss. Therefore, both because the proposed supplementation is timely and in light of the content of the proposed supplementation, Queen's motion is granted and a supplemental report may be served on or before **May 19, 2006**.

11

### IV. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

    1. International Paper's motion to preclude (Docket No. 36) is:

        A. **DENIED** in its entirety as to McHugh, Lambrinos, and Minkin;

        B. **GRANTED** as to Liberty to the extent that Queen is precluded from calling Liberty as a witness during his direct case but **DENIED** to the extent that, if deemed admissible by the trial court, Queen may call Liberty to testify during his rebuttal case; and

        C. **GRANTED** as to Handley, Lewis, Choi, and Manthorne to the extent that Queen is precluded from eliciting testimony from these witnesses as specially employed expert witnesses but **DENIED** as to the testimony of these witnesses as treating physicians; and

    2. Queen's motion for leave to serve a supplemental expert witness report from Lambrinos (Docket No. 38) is **GRANTED**, and Queen shall serve such supplemental report on or before **May 19, 2006**.

**IT IS SO ORDERED.**

DATED: May 5, 2006
          Albany, New York

*David R. Homer*
United States Magistrate Judge